The next case is People v. Chambliss. We have Mr. Lisko for the appellant and Mr. Plummett for the athlete. Today I'm going to talk about the first two issues in the brief and stand on the sentencing issue unless this court has any questions about that. The doors into the chapel at the Smith Memorial AME Zion Church in Des Moines are double saloon doors. They go in and out like this. You push them in to go in, push them out to go out. Each of the doors has a couple small panes of glass in them. On Wednesday night there was a service. There were a few people there having a church service. This defendant had been outside. He had apparently been beaten up and it was obvious that something had happened. He had blood on him. And he was angry because he couldn't get anybody to help him. He goes up to the church and he bangs open the doors and he goes into the chapel. He ransoms the people. As he's leaving he bangs his way out just as he did when he came in. This time his fist went through one of the panes of glass. Ultimately he was charged with criminal damage to church property. Was his fist closed? I think so. I'll go ahead and concede that. He was found guilty of criminal damage to property. To be guilty of that crime you have to knowingly have damaged the property. Here he was reckless. He did this act, fist closed, fist open, when he went into the chapel. He did exactly the same thing with different results coming out. He didn't put his fist through the glass knowingly. Wasn't there testimony by witnesses that said and they demonstrated like he was putting his fist forward like that at the glass? Yes, but there was also evidence. And couldn't the trier of fact infer from that that he did it knowingly? And if so, isn't our standard that if any rational trier of fact could have found the evidence as they did, then we affirm as far as reasonable doubt? Yes, that's true. But I don't think that was a reasonable assumption because we don't know if his fists were open or closed when he came in, but he used a tremendous amount of force to open the doors. I mean it was testimony that the doors slammed open when he came in. They slammed open when he came out. There wasn't evidence that he stood there and took direct aim at the window. Well, does he have to say, I know I am about to bust this window out with my fist. Do we have to have that? You have to act knowingly and I would say in this case that means with some amount of awareness that if my fist goes through that window, or if my fist comes in contact with the window, the window will break. My point is I don't think he deliberately aimed at the window. He just was trying to get out of there the same way he got in. Nothing happened when he went in. He acted with the same intent on the way out. And I'm saying that that wasn't sufficient to prove him guilty of no acting knowingly. The other issue is the constitutionality of enhancing criminal damage to property from a class A misdemeanor to a felony simply because the bricks and mortar belong to a church and not to an individual or a business. There's nothing about this brick and mortar building that makes it any different than anything else. Now there are cases in Illinois that talk about protecting a church like in terms of selling drugs within a thousand feet of a church. But I couldn't find any case that talked about criminal damage to property so I think that this is a case of first impression on this issue. The problem is that bricks and mortar are bricks and mortar. It doesn't matter if it belongs to a church or a business or my house. There's also the problem of what about some of these religions that, like the Amish, they have meetings on Sunday at somebody's house. So if I throw a brick through their window on a Sunday, I'm damaging church property. But if I throw a brick through that same exact window on Tuesday, that's just regular criminal damage to property. And for these reasons, we ask that your Honor's find that the statute violates the equal protection, or I'm sorry, the Establishment Clause.  Thank you. Counselor, do you have a motion to move the rebuttal? Ms. Bormack? Your Honor's counsel, as to the reason for the doubt issue, there were four people who testified. Three of whom witnessed him, the defendant, balling his fist up and demonstrated how he punched like a boxer through the window. The window was an eighth of an inch thick, thin glass. And anybody who punches that thin of a glass has to know that there's a reasonable probability and is most likely that they're going to break that glass. The defendant's intent and his knowledge came together from the fact that he came in. Nobody witnessed him, how he opened the doors. But it did make, he came in with a certain amount of force and it made a noise and it startled everybody. And he began to rant and rave and call the individual members of the worship service names. And he threatened to kill, he said, I'm going to kill someone, but they don't know exactly who he threatened to kill. He called one woman an adulterer. He called other people other names. He was extremely angry. And his intent to damage something can be inferred from the fact, from the surrounding circumstances, that he was extremely angry. And two of the four witnesses testified that he wasn't trying to open the door when he left. The doors had handles and he wasn't trying to open the door. What he was trying to do was punch the window. And that's, it's not, their testimony is not contradicted. And a reasonable trier of fact could have deduced from these facts that he knowingly punched and damaged the property of the church. Now, as to the Establishment Clause, the defendant hasn't made an argument that applies any legal test. The legal test that applies to the Establishment Clause, which is Lemon versus Kurtzman, the three-pronged test, didn't do so either in brief. Only offered conclusory statements about the bricks and mortar of a church not being different than any other brick and mortar and nut shouldn't be protected. And there's just really no coherent argument. And this court could find a way and should. But in the other event, talk about Lemon versus Kurtzman. The first prong requires that the legislative purpose be secular. And in this case, the legislative purpose is secular.  It's in context. There's farm equipment and schools and non-movable implements of agriculture, such as barns and silos, etc. And there is a different, there is a reason, there is a secular reason to treat these places differently. Places of worship provide a whole lot more than just a place of worship. They provide incredible amounts of community services, which is, has, the legislature had a secular purpose to protect food pantries, clothing for the needy, blood drives. Sometimes churches serve, places of worship serve as polling places, Girl Scouts, Boy Scouts, daycare, after-school daycare, places for collection of money and goods and services for disasters. I recall going to give blood after 9-11 at a church. And so, the legislature had a secular purpose for protecting places of worship as well as schools, etc., and farm implements. So, it passes the first prong, the secular purpose prong. Its principal effect cannot be to, our primary effect cannot be to advance or inhibit religion. That's the second prong. And in this case, the principal effect of this statute is to punish criminals who damage property of a school, of a place of worship, or of farm equipment. And it does confer an incidental benefit on a place of worship. But the broader benefit is to the community at large by protecting a place of worship in this statute. So, its effect is incidental and it's not such a great benefit that it violates the second prong. The third prong is that it cannot establish excessive government entanglement. Punishing a criminal for damaging a place of worship doesn't create a continuing relationship between the church and the state. There is no continuing relationship. And, as I said, protecting a place of worship has a secular purpose and a benefit to the community at large. And it, there's nothing, the defendant shows nothing that violates any of the prongs of women versus prisoners. And this court should affirm. And finally, the statute constitutional, are there any questions? Thank you. Let's go. There are places other than churches that have food banks, that have flood drives, that are polling places. Why am I protected if I go into the church to vote, but I'm not if I go into the VFW or in some rural counties, somebody's home? It's not a question of being protected, it's an enhancement. Correct. But why is it a worse crime to fight if a polling place that's in the VFW is attacked as opposed to the polling place in a church? Well, couldn't the legislature say if damage is done to church property, that affects a larger number of people than to a private residence or to a private business? And therefore, we're going to treat it differently? I'm not sure that's correct. I mean, a business, I would think it would affect a lot more people at a business than it would at a church. I mean, I guess it depends on the church and the size of the church, but businesses attract a lot more people than churches. And churches are maybe two or three days a week, and businesses are up to seven. So I'm not sure that would be a valid argument. Anything else? Thank you. Thank you both for your briefs and arguments. The court will take the matter under advisement to issue its decision. We'll take a short recess. All rise.